Christopher B. Hadley (14055)
Nathan D. Thomas (11965)
C. Michael Judd (14692)
**JONES WALDO HOLBROOK & McDONOUGH PC**
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Tel.: (801) 521-3200
chadley@joneswaldo.com
nthomas@joneswaldo.com
mjudd@joneswaldo.com

*Attorneys for Plaintiff Big Squid Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISON

| | |
|---|---|
| **BIG SQUID INC.**, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**DOMO, INC.**, a Utah corporation,<br><br>Defendant. | **OPPOSITION TO [ECF NO. 4] DOMO'S MOTION TO STAY DAPPA-RELATED CLAIMS AND COMPEL ARBITRATION**<br><br>Case No. 2:19-cv-114-BSJ<br><br>Judge Bruce S. Jenkins |

Plaintiff Big Squid Inc. hereby opposes the Motion to Stay DAPPA-Related Claims and Compel Arbitration filed by Defendant Domo, Inc. [ECF No. 4].

### Preferred Resolution

Domo moves the Court to stay what it terms "DAPPA-related claims" and to compel the parties to arbitrate those claims. Big Squid asks the Court to deny Domo's motion as premature.

Big Squid agrees that at some point in this litigation— after the resolution of questions presented regarding the court's jurisdiction over this matter and likely after discovery has been conducted—it may be possible to identify which claims in Big Squid's Complaint and Domo's Counterclaim are truly "DAPPA-related." At that point, those claims may be stayed and determined by binding arbitration. But it is far too early to meaningfully disentangle those claims.

1547670.1

If the Court does elect to try to identify "DAPPA-related claims" now, none of Big Squid's claims should be wholly stayed and sent to arbitration. Each of Big Squid's claims relies independently on other agreements between the parties, which do not contain arbitration clauses. These claims should therefore move forward—in the event the Court determines it has jurisdiction over this matter at all.

By contrast, Domo's Counterclaim contains two claims that are based solely on the DAPPA, as well as several others (including its copyright claim and its state and federal trade-secret claims) that are so connected to the DAPPA that they must be stayed and sent to arbitration as well.

## Background

Domo's Motion to Stay and Compel Arbitration relates to an agreement called the "Domo App Publisher Program Agreement" ("the DAPPA"), under which Big Squid developed applications listed for sale on the Domo Appstore. *See* Compl. ¶ 25 [ECF No. 3-1]. The DAPPA—along with an important Amendment, executed in December 2016—contains provisions protecting Big Squid's and Domo's technology from misuse by the other. *See, e.g. id.* ¶ 30.

As the parties' pleadings make clear, this case is about more than the DAPPA. It could conceivably be broken into pieces in at least two ways. First, the dispute between the parties is governed by as many as three contracts:

- an April 2015 Master Service Provider Agreement ("the MSPA");
- the January 2016 DAPPA (and its Amendment, executed in December 2016); and
- a July 2016 Master Resale and Referral Agreement ("the MRRA").

And second, taking Big Squid's Complaint and Domo's Counterclaim together, the case can also be broken down by the *type* of wrongful conduct alleged:

- **Non-payment.** Big Squid alleges that Domo has refused to make payments required by the three agreements;
- **Technology misuse.** Each party alleges that the other misused the its technology—either in violation of an agreement between the parties or in violation of state or federal law;

- **Other violations of the agreements.** Domo alleges, among other things, that Big Squid has breached a restrictive covenant contained in the MSPA and that Big Squid has not complied with certain "audit" provisions; and

- **Business torts.** Each party alleges that the other engaged in tortious conduct, including interference with business relations, unfair competition, and conversion.

As a careful review of Big Squid's Complaint and Domo's Counterclaim demonstrates, it is not easy to tease the parties' claims and allegations into these separate pieces. Big Squid, for example, has elected to plead its contract claims together (with breaches of the MSPA, the DAPPA, and the MRRA grouped together in a single claim), while Domo has elected to plead them separately (one breach–of-contract claim for the MSPA, one for the DAPPA, and one for the MRRA). While pleading separate claims for each agreement may provide a tactical advantage, Big Squid groups the agreements together for a practical reason: when Domo decided to stop payment on *all* Big Squid invoices, beginning in May 2018, that action violated all three of the agreements.

Domo's pleading choices create their own set of challenges. While Domo's Counterclaim anticipates that two of its DAPPA claims—its DAPPA breach-of-contract and DAPPA implied-covenant-of-good-faith-and-fair-dealing claims—may also be stayed pending arbitration, Domo's other claims are also plainly DAPPA-related, particularly when they touch on "technology misuse." Domo's copyright claim and its state and federal trade-secret claims, for example, all allege the same basic wrong—that Big Squid has misused Domo's technology—and thus all "aris[e] out of" the DAPPA or, at the very least, are brought "in connection with [the] DAPPA."

This is particularly true in light of a glaring omission by Domo: Domo neglects to even *refer* to a December 2016 Amendment of the DAPPA, which substantially expands Big Squid's rights under the Agreement. That Amendment, which is attached as Exhibit A to this opposition, heavily reworks Sections 7 and 8 of the DAPPA, which relate to Big Squid's "license to Domo" and to Big Squid's and Domo's "intellectual property ownership." Section B.2 of that amendment, for example, bars Domo from developing "products, software, or technologies" that "incorporate or rely upon any [Big Squid] Intellectual Property or Confidential Information." And Section B.3

3

provides that Big Squid "retains title and ownership of all [its] Intellectual Property" and in "any modifications or derivative works thereof." In short, Domo's counterclaim arguments regarding alleged misuse of its technology clearly require interpretation and application of the DAPPA.

As explained below, at this early stage of the case, the entangled allegations and claims of Big Squid's Complaint and Domo's Counterclaim pose danger on either side for an order staying "DAPPA-related claims" and compelling arbitration of those claims. On one hand, such an order could be *overinclusive*—if it drags into arbitration parts of Big Squid's claims that are wholly unconnected to the DAPPA. On the other hand, such an order could be *underinclusive*—if it stayed and compelled arbitration only Domo claims that expressly invoke the DAPPA, as many of Domo's non-contractual claims, including its copyright and trade-secret claims, are intricately connected to the type of technology misuse covered by the DAPPA.

## Argument

"[A]rbitration is a matter of contract." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). And agreements to arbitrate should be "rigorously enforce[d] . . . according to their terms." *Id.*; *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). But construing arbitration provisions in complex cases is often difficult, particularly when a party claims that an arbitration provision covers some claims—or parts of some claims—but not others. *See, e.g.*, *Grigsby v. Income Prop. USA, LLC*, No. 2:17-cv-110, 2018 WL 4621766, at *4–8 (D. Utah Sept. 26, 2018). A court analyzing an arbitration provision applies "ordinary state-law principles that govern the formation of contracts," including state law regarding severability of claims subject to arbitration and claims not subject to arbitration. *See id.* at *4, *8. And if an arbitration provision is unenforceable as to certain claims, and those claims are not severable from the others, the entire arbitration provision may be unenforceable. *Id.* at *8.

As explained above, three agreements govern the relationship between Big Squid and Domo—the MSPA, the DAPPA (with its Amendment), and the MRRA. And only one of those

4

agreements—the DAPPA—contains an arbitration clause. Thus, before the Court can stay claims and direct the parties to arbitration, it must determine what aspects of the dispute between Big Squid and Domo "fall[] within the scope of [the DAPPA's] arbitration clause," and what aspects do not. *See Cummings v. FedEx Ground Pkg. Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005). To make that determination, a court must "classify the particular [arbitration] clause as either broad or narrow." *Id.* If the clause is narrow, an issue should be arbitrated only if it "is on its face within the purview of the clause," while "collateral matters" should not be sent to arbitration. *Id.* If the clause is broad, even collateral matters may be sent to arbitration, so long as "the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.*

Domo characterizes the DAPPA arbitration provision as broad. *See* Mot. Compel Arbitration, at 6 [ECF No. 4]. But, notwithstanding this contention, the clear language of the contract must control. Here, the provision is clear that it applies only to issues that arise out of the DAPPA or are "connect[ed]" to the DAPPA—to be covered by the provision, an issue must touch on the "breach, termination, enforcement, interpretation, or validity" of the DAPPA. *See* DAPPA § 16.8.

**I.  No Part of the Case Should be Stayed or Sent to Arbitration Until Issues Regarding Federal Jurisdiction Have Been Resolved.**

Big Squid filed its action in state court. Domo removed to federal court based on the thinnest of pretext: Domo alleged that an unpled copyright claim was hidden in Big Squid's Complaint, providing a hook for federal jurisdiction. This is an insufficient basis for federal jurisdiction over the claims initially pleaded—and which Big Squid chose to bring in state court—and Big Squid has asked the court to remand accordingly. *See* Mot. to Remand, at 2 [ECF No. 18].

Federal subject-matter jurisdiction "cannot be consented to or waived, and its presence must be established in every cause under review in the federal courts." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1022 (10th Cir. 2012). And as the party invoking federal jurisdiction, Domo "bears the burden of establishing that such jurisdiction is proper." *See Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014). Because subject-matter

5

jurisdiction "involves a court's power to hear a case," *see U.S. v. Cotton*, 535 U.S. 625, 630 (2002), defects in subject-matter jurisdiction must be addressed immediately. Big Squid thus asks that the Court address the jurisdictional issues raised in its Motion to Remand [ECF No. 18] before taking any other action in this case, including consideration of Domo's Motion to Compel Arbitration.

II.   **Domo's Motion Should Be Denied as Premature.**

In its Motion to Compel Arbitration, Domo makes no meaningful effort to tease apart issues that arise from the DAPPA and issues that arise from the MSPA and the MRRA. The allegations of Big Squid's Complaint and Domo's Counterclaim illustrate why separating the issues is difficult. In its Counterclaim, for instance, Domo couches its demand to audit or inspect Big Squid's records in all three agreements. *See* Domo's Countercl. ¶¶ 26, 54, 74. In fact, in paragraph 31 of its Counterclaim, Domo alleges that a list of behaviors constitute breaches of the MSPA by Big Squid—then alleges later in the Counterclaim that these *exact actions* listed in paragraph 31 also constitute breaches of the DAPPA, *see id.* ¶ 55, and the MRRA, *see id.* ¶ 74. *Cf., e.g.*, Compl. ¶¶ 76–77, 86, 88 (alleging that Domo's actions constitute breaches of the "covenants and obligations set forth in the MSPA, the DAPPA, and the MRRA" as well as the implied covenant of good faith and fair dealing inhering in each of those agreements).

The "overarching purpose" of the FAA—and, by extension, of arbitration provisions themselves—"is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate *streamlined proceedings*." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (emphasis added). But at this stage, any attempt to untangle "DAPPA-related claims" from MSPA-related claims and MRRA-related claims could result only in some set of inchoate allegations being sent to arbitration, to determine whether those allegations constitute a violation of the DAPPA—while an identical set of allegations remains in litigation, to determine whether they constitute a violation of the MSPA or the MRRA. That would not "streamline" anything.

Ordering the parties to arbitrate DAPPA-related claims at this point would also be premature given other legal questions regarding the enforceability of the DAPPA.  First, Big Squid alleged in its Complaint that given that the MRRA was executed after the MSPA, and given the subject-matter overlap between the two agreements, that the non-competition provision in the MSPA is unenforceable.  *See* Compl. ¶ 106 [ECF No. 3-1].  The same may be true of the DAPPA's arbitration provision: the absence of an arbitration provision in the MRRA cuts against Domo's argument that the parties intended to utilize arbitration to resolve their disputes.  Second, Domo's flat refusal to make payments required by the DAPPA amounts to a constructive termination of the agreement—calling into question the legitimacy of Domo's attempts to rely upon the DAPPA to force portions of this litigation into arbitration.  Finally, the inequality in bargaining power between the two sides may render the arbitration provision unenforceable.  As Domo alleged in its Counterclaim, it was an early-stage investor in Big Squid, *see, e.g.*, Domo's Countercl. ¶ 11 [ECF No. 10], and the significant power it wielded over Big Squid at that time makes Big Squid's agreement to arbitrate illusory.

Discovery is likely to shed further light on these arguments.  And discovery may also, at some point, allow both sides to draw meaningful distinctions between "DAPPA-related issues" and other issues. But the current state of the record does not allow those distinctions to be drawn now.  Compelling arbitration at this stage of the proceedings has the substantial potential to force the parties to arbitration on claims related to issues that, by the terms of the parties' agreement, are *not* subject to arbitration, and it risks adding unnegotiated provisions to each contract other than the DAPPA.  Big Squid therefore asks that the Court deny Domo's Motion to Compel Arbitration as premature.

III. **Because Domo's Motion "Only Addresses the Portions of Each Cause of Action" Related to the DAPPA, a "Stay of DAPPA-Related Claims" Would Not Fully Stay Any of Big Squid's Claims.**

Domo's Motion to Compel Arbitration asks the Court to stay Big Squid's "DAPPA-Related Claims." *See* Mot. Compel Arbitration 2 [ECF No. 4]. And Domo defines "DAPPA-Related Claims" as "the portions of each cause of action which relate to the DAPPA." *Id.* Domo, then, isn't asking the Court to stay any of Big Squid's *claims*—only any parts of its claims. And Domo makes no effort to describe what it means for a "portion of a cause of action" to "relate to the DAPPA."

Several things, at least, are clear: The dispute over Domo's refusal to make payment for services Big Squid provided under the MSPA and the MRRA does not "relate to the DAPPA." The dispute over the enforceability of the MSPA's restrictive covenants is similarly unrelated to the DAPPA, as is the dispute over Domo's further strangulation of Big Squid's cashflow through its interference with Big Squid's business relationships.

Simply put, the DAPPA's arbitration provision doesn't touch these claims. So even if the Court does opt to stay "portions" of Big Squid's claims, these non-DAPPA-related pieces of Big Squid's Complaint must remain in litigation, as the parties never agreed to arbitrate disputes that arise under the MSPA or the MRRA or disputes wholly unrelated to the DAPPA or its subject matter.

IV. **Domo Claims Related to "Technology Use"—Including Its Copyright and Trade-Secret Claims—Are Collateral to Its DAPPA-Related Claims and Must Accompany Those Claims to Any Court-Ordered Arbitration.**

By contrast, several of Domo's non-contract claims are collateral to its DAPPA claims. As described in the parties' pleadings, the DAPPA governs the terms of Big Squid's participation in the Domo App Publisher Program. *See* Domo Countercl. ¶ 47 [ECF No. 10]. Among the issues addressed by the DAPPA—by Domo's own description—are the following:

8

- A contractual requirement that Big Squid "comply . . . with all foreign and domestic laws, . . . including, but not limited to, trademark and copyright laws," *id.* ¶ 48 (describing DAPPA § 3.1);

- A contractual requirement that Big Squid not "modify or make derivative works based upon the Domo Service," *id.* ¶ 49 (describing DAPPA § 9.1);

- A contractual requirement that Big Squid not misuse "Domo Intellectual Property," *id.* ¶ 51 (describing DAPPA § 9.2); and

- A contractual requirement that neither Big Squid nor Domo disclose or misuse the other's Confidential Information, *id.* ¶ 52 (describing DAPPA § 13).

As explained above, Domo also neglects to mention the DAPPA's December 2016 Amendment, which provides significant protection for Big Squid's intellectual property and confidential information, including:

- A contractual provision prohibiting Domo from modifying Big Squid's Apps, *see* Ex. A, DAPPA Amendment § B.1 (modifying DAPPA § 7.2.1);

- Two contractual provision prohibiting Domo from "utiliz[ing], incorporat[ing], or rely[ing] upon" any of Big Squid's intellectual property or confidential information in developing competing technology, *see* Ex. A, DAPPA Amendment §§ B.2, B.4 (modifying DAPPA §§ 7.2.2, 8.2); and

- A contractual provision specifying that Big Squid retains all rights to any "modifications" of its technologies to any "derivative works thereof," *see* Ex. A, DAPPA Amendment § B.3 (modifying DAPPA § 8.1).

In light of those provisions, all issues related to "technology misuse"—both Domo's misuse of Big Squid's technology and Big Squid's alleged misuse of Domo's technology—"fall[] within the scope of [the DAPPA's] arbitration clause," s*ee Cummings v.  FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir.  2005), based on the face of the provision itself.  At the very least, any Domo claims related to "technology misuse" certainly "implicate[] issues of [DAPPA] construction or the parties' rights and obligations under [the DAPPA]," *see id.*, as an analysis of whether Big Squid has violated copyright law with respect to Domo's "source code" or has misused Domo's intellectual property, including its trade secrets, implicates the DAPPA provisions covering that same subject matter.  Domo itself insists that the DAPPA arbitration clause is

9

broad—and as a result, it covers not only claims arising directly from the DAPPA, but also "collateral claims," which include Big Squid's claims regarding misuse of technology.

Accordingly, if the Court does stay portions of this case and order arbitration of "DAPPA-related claims," the claims (or portions of claims) sent to arbitration should include not only Domo claims that expressly rely on the DAPPA (its fifth and sixth counterclaims), but also the following claims related to "technology misuse":

- **Domo's First Counterclaim—Copyright Infringement.** The issues of Big Squid's alleged "reproduc[tion] and incorporat[ion] [of] Domo's copyrighted source code and software" and Big Squid's alleged "creati[on] [of] derivative works of Domo's copyright materials," *see* Domo's Countercl. ¶¶ 79–80 [ECF No. 10], are issues expressly covered by the DAPPA, and thus fall within the scope of its arbitration clause.

- **Domo's Second and Third Counterclaims—Federal and State Trade-Secret Misappropriation.** Domo expressly acknowledges that Big Squid "was provided access to Domo's trade secrets" under the parties agreements, including the DAPPA; that the DAPPA requires Big Squid to "safeguard Domo's trade secrets"; and that Big Squid used Domo's trade secrets "in a manner not authorized" by the DAPPA. *See id.* ¶¶ 94–95, 97(c), 107, 112–114, 116(c). Resolution of these trade-secret claims therefore "implicates issues of [DAPPA] construction" and must therefore be arbitrated.[1]

To the extent Domo's other claims—including its intentional-interference claim and its injunctive-relief claim—expressly rely on the DAPPA, those "portions" of Domo's claims should be included in any batch of claims (or partial claims) sent to arbitration. *See id.* ¶¶ 179–180, 193.

## Conclusion

The Court should take no action on any substantive Domo motion—including its Motion to Compel Arbitration—until it has resolved the jurisdictional issues raised in Big Squid's Motion to

---

[1] To the extent Domo argues that its statutory claims cannot be arbitrated because arbitration could not provide Domo its full scope of statutory remedies—an argument based on the "effective vindication" principle—the intertwined nature of the technology-misuse claims would mean not that Domo be allowed to litigate its statutory claims while contract claims are sent to arbitration, but rather that the effective-vindication principle "renders the entire arbitration provision unenforceable." *See Grigsby v. Income Prop. USA, LLC*, No. 2:17-cv-110, 2018 WL 4621766, at *4–8 (D. Utah Sept. 26, 2018).

Remand.  When the Court does reach the Motion to Compel Arbitration, it should deny it as premature, as "DAPPA-Related Claims" in the parties' pleadings are too entangled with the parties' other claims—at this early stage—to be separated, stayed, and sent to arbitration.

If the Court does opt to stay a part of this action now, its Order should accomplish two things: (1) It should ensure that all portions of Big Squid's claims that are clearly distinct from the DAPPA—including all portions of its claims that are based on the MSPA or the MRRA—are separated and kept from arbitration, as those agreements contain no arbitration clause.  (2) The Domo non-contract claims hinging on allegations of "technology misuse" are so intertwined with the DAPPA that they either fall within the arbitration clause on its face or else are collateral to the arbitration provision.  These claims—Domo's copyright claim and its trade-secrets claims—must be included in any "DAPPA-Related" arbitration.

Dated:  March 5, 2019.

JONES WALDO HOLBROOK & McDONOUGH PC

By: /s/ Nathan D. Thomas
 Christopher B.  Hadley
 Nathan D.  Thomas
 C.  Michael Judd

*Attorneys for Plaintiff Big Squid Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2019, I electronically filed the foregoing *Opposition to Domo's Motion to Stay DAPPA-Related Claims and to Compel Arbitration* with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following:

>Gregory M. Saylin (gsaylin@fabianvancott.com)
>Nicole M. Deforge (ndeforce@fabianvancott.com)
>Tyson C. Horrocks (thorrocks@fabianvancott.com)
>Sarah C. Vaughn (svaughn@fabianvancott.com)
>FABIAN VANCOTT
>215 South State Street, Suite 1200
>Salt Lake City, Utah 84111-2323

*Attorneys for Defendant Domo, Inc.*

By:  *Alayne Chavez*