IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BIG SQUID, INC.,<br><br>      Plaintiff and Counterclaim Defendant,<br><br>   v.<br><br>DOMO, INC.,<br><br>      Defendant and Counterclaimant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:19-cv-193<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

This case stems from a business relationship between two software companies. Beginning in 2015, Plaintiff Big Squid, Inc. and Defendant Domo, Inc. entered into contracts to sell software and software implementation services. The parties' relationship soured, and Big Squid filed suit in the Third District Court for the State of Utah.[1] Domo counterclaimed, and removed to this court.[2] The court now takes up Domo's Motion to Stay Big Squid's DAPPA-Related Claims and Compel Arbitration,[3] Domo's Motion to Dismiss,[4] and Big Squid's Motion to Dismiss.[5] For the reasons stated, Domo's Motion to Compel Arbitration is DENIED, Domo's Motion to Dismiss is GRANTED IN PART, and Big Squid's Motion to Dismiss is DENIED.

---

[1] Dkt. 2, Ex. B (Complaint).

[2] *See* Dkts. 2, 6.

[3] Dkt. 8.

[4] Dkt. 7.

[5] Dkt. 11.

## BACKGROUND

Domo and Big Squid are software companies with symbiotic capabilities. Domo sells software that often requires professional implementation services, which Big Squid offers. Beginning in 2015, Domo and Big Squid worked together productively for more than three years.[6] During that time, three contracts governed the parties' relationship: the Master Service Provider Agreement (MSPA), the Domo App Publisher Program Agreement (DAPPA), and the Master Resale and Referral Agreement (MRRA).[7]

In April of 2015, Domo and Big Squid entered into the MSPA.[8] Under the MSPA, Big Squid offered professional software implementation services to Domo's existing customers.[9] Among other rights and obligations, the terms of the MSPA govern compensation;[10] auditing rights;[11] restrictions on competition between the parties;[12] the governing law;[13] and the use and exchange of confidential information,[14] intellectual property,[15] and "Deliverables."[16]

---

[6] Dkt. 2, Ex. B (Complaint) ¶ 1; Dkt. 6 (Answer) ¶ 1.

[7] Dkt. 2, Ex. B (Complaint) ¶ 3; Dkt. 6 (Answer) ¶ 3. *See also* Dkt. 6, Ex. A (the MSPA), Ex. B (the DAPPA), and Ex. C (the MRRA). Domo executed these contracts with Cephalopod Media, LLC. Neither party disputes that Big Squid, formerly known as Cephalopod Media, LLC, is bound by these contracts.

[8] Dkt. 6, Ex. A § 2.1.

[9] *Id.*

[10] *Id.* § 5.

[11] *Id.* § 5.5.

[12] *Id.* § 6.3.

[13] *Id.* § 11.4 ("This Agreement shall be governed by and construed in accordance with the laws of the State of Utah").

[14] *Id.* § 6.

[15] *Id.* § 7.

[16] *Id.* § 7.1.2.

In early 2016, the parties expanded their contractual relationship by executing the DAPPA.[17]  Under the DAPPA, Domo gave Big Squid access to the Domo Appstore, which Big Squid could use to sell software to Domo's network of clients.[18]  Like the MSPA, the terms of the DAPPA govern compensation;[19] restrictions on competition between the parties;[20] the governing law;[21] and the use and exchange of confidential information and intellectual property.[22]  The DAPPA also contains an arbitration provision.  The arbitration provision provides that "any action arising out of or in connection with this DAPPA or the breach, termination, enforcement, interpretation or validity thereof, will be determined by binding arbitration in Salt Lake County, Utah, U.S.A. by one arbitrator."[23]

In July of 2016, the parties expanded their relationship once again by executing another agreement, the MRRA.[24]  The MRRA augmented the scope of professional services Big Squid could offer under the MSPA by authorizing Big Squid to "resell the Domo Service and related Domo Professional Services and offerings to [clients recruited by Big Squid], refer potential [clients] to Domo, or provide Professional Services to Domo Subscribers as a Domo subcontractor."[25]  Like the MSPA and portions of the DAPPA, the MRRA governs

---

[17] Dkt. 6, Ex. B.  The DAPPA was executed on January 31, 2016.

[18] *Id.*

[19] *Id.* § 2.

[20] *Id.* § 9.

[21] *Id.* § 16.7 ("This DAPPA will be interpreted, construed, and enforced in all respects in accordance with the local laws of the State of Utah").

[22] *Id.* §§ 9.2, 13.

[23] *Id.* § 16.8.

[24] Dkt. 6, Ex. C.

[25] *Id.* at 1.

compensation;[26] auditing rights;[27] the governing law;[28] and the use and exchange of confidential information,[29] intellectual property,[30] and "Deliverables."[31]  The MRRA omits the arbitration provision earlier negotiated and included in the DAPPA.[32]

After nearly three years of productive collaboration, the parties' relationship began to suffer.  On January 30, 2019, Big Squid filed suit in the Third District Court for the State of Utah.[33]  Big Squid brought five state law claims against Domo: (1) Breach of Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, (3) Tortious Interference with Economic Relations, (4) Unfair Competition, and (5) Declaratory Judgment.[34]  Domo timely removed, and the case was assigned to Judge Bruce S. Jenkins.[35]  Big Squid subsequently moved to remand the suit to state court.[36]  Concluding Big Squid's Complaint asserted "claims sounding on contract, not a claim of copyright infringement or any other cause of action presenting a federal question," Judge Jenkins remanded the suit to Utah state court on March 18, 2019.[37]

Later that day, Domo filed its Answer and Counterclaim in state court.[38]  Domo's Counterclaim asserts twelve causes of action, including: Copyright Infringement, Federal

---

[26] *Id.* § 7.

[27] *Id.* § 6.

[28] *Id.* § 14.3 ("This Agreement is governed by Utah law").

[29] *Id.* §§ 1, 8.

[30] *Id.* §§ 1, 2.3, 9.

[31] *Id.* § 9.

[32] *See id.* § 14.3.

[33] Dkt. 2, Ex. B (Complaint).

[34] *Id.* ¶¶ 73–110.

[35] *See* Case No. 2:19-cv-114, Dkts. 3, 15.

[36] *See* Case No. 2:19-cv-114, Dkt. 18.

[37] *See* Case No. 2:19-cv-114, Dkt. 33 ¶¶ 9–10.

[38] Dkt. 2 ¶ 7.

Misappropriation of Trade Secrets, State Misappropriation of Trade Secrets, Conversion, Intentional Interference with Economic Relations, and Injunctive Relief.[39]  Domo also filed a "Notice of Removal."[40]  Big Squid did not move to remand, and because Domo asserts a claim for copyright infringement, this court is satisfied that removal is proper under 28 U.S.C. § 1454(a).[41]

Domo now moves to stay Big Squid's DAPPA-related claims and compel arbitration.[42]  Domo also moves to dismiss Big Squid's claims.[43]  Big Squid moves to dismiss all but Domo's contract claims.[44]  Before the court heard oral argument on the parties' Motions, it invited the parties to submit additional briefing on "the meaning and scope of the word 'action' in the [DAPPA's] arbitration provision."[45]  Both parties submitted supplemental briefing,[46] and the court received oral argument on July 11, 2019.[47]  The court now takes up Domo's Motion to Compel Arbitration before turning to the parties' Motions to Dismiss.

---

[39] Dkt. 6 ¶¶ 78–193.

[40] *See id.*

[41] *See* 28 U.S.C. § 1454(a) (permitting removal of civil actions "in which any party asserts a claim for relief arising under any Act of Congress relating to . . . copyrights.").  *See also Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1749 (2019) ("And §§ 1454(a) and (b) allow 'any party' to remove '[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights.'").

[42] Dkt. 8.

[43] Dkt. 7.  Domo's Motion to Dismiss "addresses claims pertaining to the DAPPA . . . to the extent the Court does not Grant Domo's motion to stay them." *Id.* at 4 n.2.

[44] Dkt. 11.  Big Squid's Motion to Dismiss "seeks dismissal of Domo's federal statutory tort claims, its state statutory tort claim, its state common-law tort claims, and its injunctive-relief 'claim.'" *Id.* at 2.

[45] Dkt. 68.

[46] Dkts. 69, 70.

[47] Dkt. 71.

## DISCUSSION

### I.    The Motion to Compel Arbitration

#### a.  Legal Standard

Under the Federal Arbitration Act, contractual agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[48]  The FAA permits a party to an arbitration agreement to "apply to a federal court for a stay" while arbitration proceeds,[49] and it also permits a party to "petition a federal court for an order directing" arbitration to proceed consistent with the terms of the arbitration agreement.[50]

Because arbitration "is strictly a matter of consent[,] [it] is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration."[51] "[W]hether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination."[52]  To satisfy itself that parties have agreed to arbitrate particular disputes, "the court must resolve any issue that calls into question the *formation or applicability* of the specific arbitration clause that a party seeks to have the court enforce."[53]  "Where a party contests either or both matters, the court must resolve the disagreement."[54]

---

[48] 9 U.S.C. § 2; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (explaining arbitration agreements "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.") (citation omitted).

[49] *Rent-A-Ctr.*, 561 U.S. at 68 (quoting 9 U.S.C. § 3).

[50] *Id.* (quoting 9 U.S.C. § 4).

[51] *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal citations and quotations omitted) (emphasis in original).

[52] *Id.* at 296 (quotations, brackets, and citations omitted).

[53] *Id.* at 297 (citation omitted) (emphasis added).

[54] *Id.* at 299–301 (explaining "except where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter.") (internal citations and quotations omitted).

A party can contest the *formation* of the arbitration agreement by challenging "the validity of the agreement to arbitrate."[55] Alternatively, a party can contest the *applicability* of the arbitration agreement to particular disputes by challenging the scope of the arbitration provision.[56] When "parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause," but challenge the scope of the arbitration clause, they must overcome a presumption of arbitrability.[57] Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[58]

"To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry."[59] First, the court must determine whether the arbitration clause is broad or narrow.[60] If the clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause."[61] If the clause is broad, the presumption of arbitrability commands arbitration of collateral matters when the claim at issue implicates "contract construction or the parties' rights and obligations under it."[62] "This presumption may be overcome only if 'it may

---

[55] *Rent-A-Ctr.*, 561 U.S. at 70 (citation omitted).

[56] *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280–81 (10th Cir. 2017).

[57] *Granite Rock Co.*, 561 U.S. at 298 (citations omitted) (emphasis in original).

[58] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (citation omitted).

[59] *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 224 (2d Cir. 2001)).

[60] *Id.*

[61] *Id.* (explaining "[w]here the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview").

[62] *Id.*

be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"[63]

### b. Domo's Motion to Compel Arbitration is DENIED.

Domo moves to compel arbitration on Big Squid's DAPPA-related claims.[64]  Domo argues the court must compel arbitration on portions of every Big Squid claim because all of Big Squid's claims "specifically allege facts that arise under the DAPPA."[65]  In opposition, Big Squid contends it is too early for the court to "meaningfully disentangle" its DAPPA-related claims from others.[66]  Big Squid also argues that splitting its claims between this court and arbitration would undermine the purpose of arbitration.[67]

The parties do not dispute the formation or validity of the DAPPA.[68]  Nor do they dispute that the DAPPA "will be interpreted, construed, and enforced in all respects in accordance with the local laws of the State of Utah."[69]  Instead, they dispute the scope of the DAPPA's arbitration provision, which provides:

> Except for the right of either party to apply to a court of competent jurisdiction for a temporary restraining order, a preliminary injunction, or other equitable relief to preserve the status quo or prevent irreparable harm, *any action arising out of or in connection with* this DAPPA or the breach, termination, enforcement, interpretation or validity thereof, will be

---

[63] *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

[64] Dkt. 8.

[65] *Id.* at 7, 9 ("All of Big Squid's claims for relief directly relate to the exact circumstances that the parties agreed to arbitrate—breach of duties in the DAPPA and enforcement of its various provisions.").

[66] Dkt. 21 at 6.

[67] *Id.*

[68] Big Squid observes the DAPPA "may" be unenforceable for various reasons in its Opposition to Domo's Motion to Compel Arbitration. Dkt. 21 at 7.  These observations are unsupported by any legal authority.  *See id.* Accordingly, the court does not construe these observations as arguments challenging the formation and validity of the DAPPA.

[69] Dkt. 6, Ex. B § 16.7.

determined by binding arbitration in Salt Lake County, Utah, U.S.A. by one arbitrator.[70]

Nothing in this arbitration provision provides "clear and unmistakable evidence" the parties intended to arbitrate the applicability of the arbitration provision.[71]  Accordingly, this court will determine the applicability of the DAPPA's arbitration provision.

First, this arbitration provision is broad in scope.  The provision covers "any action arising out of or in connection with th[e] DAPPA."[72]  Courts consistently conclude this language confers a broad scope of arbitration.[73]  The FAA's presumption of arbitrability "applies with even greater force when such a broad arbitration clause is at issue."[74]

Second, the court must determine which of Big Squid's claims fall within the scope of this broad arbitration provision.  Utah contract law governs this inquiry because the DAPPA must be "interpreted, construed, and enforced . . . in accordance with the local laws of the State of Utah."[75]  When interpreting contracts under Utah law, the court seeks to understand the intentions of the contracting parties.[76]  The court begins this analysis by

---

[70] Dkt. 6, Ex. B § 16.8 (emphasis added).

[71] *Belnap*, 844 F.3d at 1280–81 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) (brackets omitted).

[72] Dkt. 6, Ex. B § 16.8.

[73] *See In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016) (concluding an arbitration provision was broad because it covered "disputes that 'arise out of *or in any way relate to*' any Cox goods or services.") (emphasis in original); *EEC, Inc. v. Baker Hughes Oilfield Operations, Inc.*, 460 F. App'x 731, 733–34 (10th Cir. 2012) (concluding the phrase "arising out of or in connection with" provided for a broad scope of arbitration); *Williams v. Imhoff*, 203 F.3d 758, 765–66 (10th Cir. 2000) (concluding the phrase "'arising out of' . . . must be broadly construed to mean 'originating from,' 'growing out of,' or 'flowing from.'"); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (concluding the phrase "arising out of or relating to" provided for a broad scope of arbitration).

[74] *P & P Indus.*, 179 F.3d at 871 (citation omitted).

[75] Dkt. 6, Ex. B § 16.7.

[76] *State v. Bruun*, 2017 UT App 182, ¶ 24, 405 P.3d 905 (citing *WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 17, 54 P.3d 1139).

evaluating whether a writing is ambiguous.[77]  During this threshold inquiry, the court looks for facial and latent ambiguities in contract language.[78]  If the court determines "the language within the four corners of the contract is unambiguous . . . the contract may be interpreted as a matter of law."[79]

The broad arbitration provision at issue here requires the court to compel arbitration of "*any action* arising out of or in connection with th[e] DAPPA."[80]  Although neither party addressed the meaning of the phrase "any action" before the court invited them to address this issue in supplemental briefing,[81] the plain language of that phrase appears to require the court to compel arbitration of the entire action.  The parties' supplemental briefing fails to persuade the court otherwise, and the court detects no facial or latent ambiguities that prevent it from interpreting the provision as a matter of law.[82]

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms."[83]  Among other definitions, Black's Law Dictionary defines "Action" as "[a] civil or criminal judicial proceeding."[84]  Consistent with this definition, Utah courts have interpreted the phrase "any action" in contracts to mean a civil proceeding.[85]  If this action arises out of or in connection with the DAPPA, the plain

---

[77] *Whitehouse v. Whitehouse*, 790 P.2d 57, 60 (Utah Ct. App. 1990) (citations omitted); *Dixon v. Pro Image Inc.*, 1999 UT 89, ¶ 14, 987 P.2d 48.

[78] *See Mind & Motion Utah Investments, LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶¶ 24, 38–42, 367 P.3d 994.

[79] *Bruun*, 2017 UT App 182, ¶ 24.

[80] Dkt. 6, Ex. B § 16.7 (emphasis added).

[81] Dkt. 68.

[82] *See* Dkts. 69–70.

[83] *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019).

[84] ACTION, Black's Law Dictionary (11th ed. 2019) (emphasis added).

[85] *Bearden v. Wardley Corp.*, 2003 UT App 171, ¶ 17, 72 P.3d 144 ("The listing contract signed by the parties entitles the prevailing party to an award of attorney fees and costs '[i]n any action, proceeding or arbitration arising out of'

language of the arbitration provision requires this court to compel arbitration of the entire action.[86]

An analysis of each claim asserted by the parties demonstrates this action arises out of and in connection with the DAPPA.  For example, every one of Big Squid's claims is based on Domo's alleged breach of the DAPPA.[87]  Likewise, every one of Domo's counterclaims is based on either Big Squid's alleged breach of the DAPPA,[88] or Big Squid's copying,[89] misappropriation,[90] or theft of information defined in and likely obtained through the DAPPA.[91]  Mindful that the FAA's presumption of arbitrability "applies with even greater force when" parties use a broad arbitration provision,[92] this court concludes this action arises out of and in connection with the DAPPA.  If either party

---

that contract, and we award Bearden attorney fees and costs on this basis."); *Scott v. Majors,* 1999 UT App 139, ¶ 34, 980 P.2d 214 ("Here, the REPC provided that '[i]n any action arising out of this contract, the prevailing party shall be entitled to costs and reasonable attorney fees.' We hold that this language includes actions taken by Scott in the bankruptcy court to preserve his rights under the specific performance judgment in Utah."); *R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1080 (Utah 1997) ("The settlement agreement stated, 'Should a party to this Agreement bring suit for a breach of this Agreement, the prevailing party in such suit may be awarded costs and attorney fees incurred in the prosecution or defense of the action.' Thus the trial court was simply enforcing the will of the parties, as expressed in the settlement agreement, when it awarded attorney fees to MEI, the prevailing party."); *PDQ Lube Ctr., Inc. v. Huber*, 949 P.2d 792, 799–800 (Utah Ct. App. 1997) ("PDQ has requested an award of costs and attorney fees on this appeal based on the real estate purchase contract provision, which provided: 'In any action arising out of this Contract, the prevailing party shall be entitled to costs and reasonable attorney[ ] fees.' PDQ has prevailed on this appeal and is therefore entitled to an award of costs and reasonable attorney fees.").

[86] *Cf. Seminole Cty. Tax Collector v. Domo, Inc.*, No. 618CV1933ORL40DCI, 2019 WL 1772108, at *1 (M.D. Fla. Apr. 23, 2019) (interpreting the language "any action" in Domo's arbitration provision, and compelling arbitration of the entire suit).

[87] Dkt. 2, Ex. B (Complaint) ¶¶ 74–77, 86, 92, 99, 108.

[88] Dkt. 6 (Counterclaim) ¶¶ 140–53, 179–80.

[89] *Id.* ¶¶ 79–80.

[90] *Id.* ¶¶ 86–125, 179–80.

[91] *Id.* ¶¶ 129, 136–37, 143, 151–52, 157, 164–65, 169–73, 179–80, 188.

[92] *P & P Indus.*, 179 F.3d at 871 (citation omitted).

invokes it, the arbitration clause mandates the court compel arbitration of this entire lawsuit.

In response to the court's "Notice to the Parties" concerning the meaning of the phrase "any action,"[93] Big Squid conceded it had waived its DAPPA arbitration rights.[94] Domo conditionally waived its arbitration rights, stating "should this Court interpret the DAPPA to require arbitration as to all of the disputes now before the Court, Domo hereby waives its rights to arbitration of any of the claims, and concurrently withdraws its motion to compel arbitration."[95] Parties may waive contract rights under Utah law, and Domo's conditional waiver constitutes "an intentional relinquishment of a known right."[96] Domo's Motion to Compel Arbitration is accordingly DENIED.[97]

---

[93] Dkt. 68.

[94] Dkt. 69 at 2.

[95] Dkt. 70 at 7.

[96] *Mounteer Enterprises, Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 2018 UT 23, ¶ 17, 422 P.3d 809 (citation omitted); *In re Discipline of Alex*, 2004 UT 81, ¶ 21, 99 P.3d 865 ("A waiver is the intentional relinquishment of a known right. To constitute waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it. Although a waiver may be either express or implied, it must be distinctly made.").

[97] Dkt. 8.

## II.    The Motions to Dismiss[98]

### a.  Legal Standard

Turning to the standards that govern the court's consideration of the pending Motions to Dismiss, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Under Rule 12(b)(6), a court must dismiss causes of action that "fail[] to state a claim upon which relief can be granted."[99]

To survive a Rule 12(b)(6) motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[100]  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[101]  When evaluating a motion to dismiss, the court "accept[s] all well-pleaded facts [in the complaint] as true and view[s] them in the light most favorable to the plaintiff."[102]  However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[103]  The reviewing court is required to "draw on its judicial experience and common sense" to evaluate whether the well-pled facts state a plausible claim for relief.[104]  "Though a

---

[98] Big Squid referenced in its Complaint the MSPA, the DAPPA, and the MRRA, and those documents are central to Big Squid's claims.  *See* Dkt. 2, Ex. B.  Domo in turn referenced the MSPA, the DAPPA, and the MRRA in its Counterclaim, and those documents are central to many of Domo's claims.  *See* Dkt. 6 (Counterclaim).  Neither party disputes the authenticity of these documents.  Because these documents are referenced in the Complaint and Counterclaim, central to the parties' claims, and indisputably authentic, this court need not convert the parties' Rule 12(b)(6) motions into motions for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[99] Fed. R. Civ. P. 12(b)(6).

[100] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[101] *Id.*

[102] *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citation omitted).

[103] *Iqbal*, 556 U.S. at 678.

[104] *Id.* at 679.

complaint need not provide detailed factual allegations, it must give just enough factual detail to provide [defendants] fair notice of what the . . . claim is and the grounds upon which it rests."[105]

### b. Domo's Motion to Dismiss is GRANTED IN PART.

Domo moves to dismiss all of Big Squid's claims. For the reasons stated below, the court denies Domo's Motion to Dismiss Big Squid's claims for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Declaratory Relief. However, the court grants Domo's Motion to Dismiss Big Squid's claims for Tortious Interference and Unfair Competition.

#### i. Big Squid's Breach of Contract Claim is Adequately Pled and not Preempted by the Copyright Act.

Domo moves to dismiss Big Squid's breach of contract claim on the grounds that Big Squid fails to state a claim upon which relief can be granted.[106] Utah law governs the MSPA, the DAPPA, and the MRRA.[107] Under Utah law, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[108] "[T]o properly state a claim for a breach of contract, a party must allege sufficient facts, which [this court] view[s] as true, to satisfy each element."[109] Big Squid has met this burden.

First, Big Squid sufficiently pleads the existence of the MSPA, the DAPPA, and the MRRA.[110] Second, Big Squid provides factual allegations indicating it performed services under

---

[105] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted).

[106] Dkt. 7 at 1.

[107] *See* Dkt. 6, Ex. A §11.4, Ex. B § 16.7, Ex. C § 14.3.

[108] *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (citation omitted).

[109] *Id.* (citation omitted).

[110] Dkt. 2, Ex. B (Complaint) ¶¶ 16, 25, 31.

the MSPA, sold apps through the DAPPA, and obtained new customers for Domo under the MRRA.[111]  Third, Big Squid offers detailed factual allegations that Domo breached these agreements by failing to pay Big Squid, and by misusing Big Squid's intellectual property and confidential information.[112]  Finally, Big Squid alleges Domo's breaches caused Big Squid injury.[113]  These allegations provide Domo with adequate notice of Big Squid's claim for relief, and they collectively state a plausible claim for breach of contract under Utah law.  Domo's Rule 12(b)(6) challenge to Big Squid's breach of contract claim is therefore denied.[114]

Domo also challenges Big Squid's breach of contract claim on the grounds that it is preempted by the Copyright Act (the Act).[115]  The Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . and come within the subject matter of copyright as specified by sections 102 and 103."[116]  "Thus, a state common law or statutory claim is preempted . . . if: (1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."[117]  The Act does not preempt state causes of

---

[111] *Id.* ¶¶ 4, 51–52, 69–70.

[112] *Id.* ¶¶ 37–42, 69–72.

[113] *Id.* ¶¶ 69–70, 78–80.

[114] *See* Fed. R. Civ. P. 12(b)(6) (providing that a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted").

[115] Dkt. 7 at 1.

[116] 17 U.S.C. § 301.

[117] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993) (citations omitted).

action if those claims require proof of an extra element that is "qualitatively different, and not subsumed within, a copyright infringement claim."[118]

Big Squid's breach of contract claim is qualitatively different from a copyright infringement claim in three ways. First, Big Squid's breach of contract claim concerns information that falls outside the scope of the Act. Each of the three contracts in question refers to the parties' use and exchange of "confidential information."[119] Although the "confidential information" governed by these contracts may include copyright material, it also includes material that falls outside the scope of the Act. For example, the MRRA defines "confidential information" in-part, as "any business or technical information of Domo or [Big Squid] that is disclosed in writing and is marked 'confidential' at the time of disclosure, or should, by the nature of the disclosure, be reasonably deemed confidential. . . [and] any personal information disclosed hereunder."[120] This business, technical, and personal information does not fall within the "subject matter of copyright."[121]

Second, Big Squid's breach of contract claim asserts rights not equivalent to the rights protected under the Act. For example, Section 106 of the Act "grants to the copyright owner the exclusive rights to: (i) reproduce the copyrighted work; (ii) prepare derivative works; (iii) distribute copies of the work; (iv) perform the work publicly; and (v) display the work

---

[118] *Id.* (citation omitted). *See also Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1244–45 (D. Colo. 2009) (explaining "while the majority [of courts] have found the breach of contract actions before them were not preempted . . . most have not adopted a blanket rule that all breach of contract claims are immune from preemption" because the "extra element test" is mean to measure whether the state law claims are "qualitatively different from[] the rights granted by the Copyright Act") (citations omitted).

[119] Dkt. 6, Ex. A § 6, Ex. B § 13, Ex. C §§ 1, 8.

[120] Dkt. 6, Ex. C § 1.

[121] *Gates*, 9 F.3d at 847.

publicly."[122] Big Squid's breach of contract claim is not predicated on any of these rights. Instead, Big Squid claims Domo breached its right to compensation for services rendered and apps sold.[123] These contractual rights to compensation are not equivalent to or subsumed within the rights granted under Section 106 of the Act.

Finally, Big Squid's breach of contract claim requires one more element than a copyright infringement claim. To prevail on a copyright infringement claim, Big Squid must establish both: (1) ownership of a valid copyright, and (2) that Domo copied protectable elements of the copyrighted work.[124] To prevail on a breach of contract claim, Big Squid must prove (1) a contract existed, (2) it performed its contractual obligations, (3) Domo breached the contract, and (4) Big Squid was injured by Domo's breach.[125] These elements differ in various ways, but the requirement that a contract existed is a clear divergence from the elements of a copyright claim. Although the contracts may have governed Domo's use of Big Squid's copyrightable information, they also governed Domo's obligation to use Big Squid's "confidential information" appropriately, and Domo's obligation to compensate Big Squid. Proving the parties agreed to these terms makes Big Squid's breach of contract claim qualitatively different from and not subsumed within a copyright infringement claim.[126] Domo's copyright preemption challenge to Big Squid's breach of contract claim fails.

---

[122] *Id.* (citing 17 U.S.C. § 106).

[123] Dkt. 2, Ex. B (Complaint) ¶ 76.

[124] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

[125] *Am. W. Bank Members*, 2014 UT 49, ¶ 15 (citation omitted).

[126] *See Gates*, 9 F.3d at 848 ("Because Gates' claim for trade secret misappropriation under the Colorado Uniform Trade Secrets Act requires proof of a breach of trust or confidence—proof that is not required under the Copyright Act—Gates' state law claims are not preempted by federal law.").

ii. *Big Squid's Breach of the Covenant of Good Faith and Fair Dealing Claim is Adequately Pled.*

Domo moves to dismiss Big Squid's claim for breach of the covenant of good faith and fair dealing on the grounds that Big Squid has failed to state a claim upon which relief can be granted.[127] Under Utah contract law, "[a]n implied covenant of good faith and fair dealing inheres in every contract."[128] The covenant requires parties to a contract to perform contractual obligations and exercise contractual rights in good faith.[129] This good faith requirement "prohibits the parties from intentionally injuring the other party's right to receive the benefits of the contract, and prevents either party from impeding the other's performance of his obligations by rendering it difficult or impossible for the other to continue performance."[130]

Under the terms of the MSPA and the MRRA, Big Squid reasonably expected to perform professional software implementation services for Domo's clients, and it reasonably expected compensation for those services.[131] Big Squid claims Domo breached the covenant of good faith and fair dealing by refusing to compensate Big Squid for the services it had performed, and "insisting that Big Squid would not receive any new outsource work until it signed [new agreements that] . . . were not open to negotiation."[132] Domo's actions, as pled, are potentially

---

[127] Dkt. 7 at 14–15.

[128] *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193 (citation omitted); *Backbone Worldwide Inc. v. LifeVantage Corp.*, 2019 UT App 80, ¶ 16 (citation omitted).

[129] *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 8, 266 P.3d 814 (explaining the covenant's "significance lies in its function of inferring as a term of every contract a duty on parties to a contract to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute.") (quotation and citation omitted).

[130] *Backbone Worldwide*, 2019 UT App 80, ¶ 16, 443 P.3d 780 (quotations, brackets, and citation omitted); *see also Eggett*, 2004 UT 28, ¶ 14 ("Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract.") (citation omitted).

[131] Dkt. 2, Ex. B (Complaint) ¶¶ 16–17, 31.

[132] *Id.* ¶¶ 63, 67, 69–70.

"[in]consistent with the agreed common purpose and the justified expectations of [Big Squid]."[133]  The allegations plausibly state Domo acted to injure Big Squid's right to receive the fruits of the MSPA and the MRRA.[134]  Domo's challenge to Big Squid's breach of the covenant claim is denied.

### iii. Big Squid's Tortious Interference with Economic Relations Claim is Inadequately Pled.

Domo moves to dismiss Big Squid's tortious interference claim on the grounds that Big Squid inadequately pled the second element of the claim—improper means.[135]  In opposition, Big Squid contends it sufficiently pled improper means by alleging Domo engaged in deceit, disparaged Big Squid to third parties, and violated established standards within the industry.[136]

"Under Utah law, the elements of tortious interference are: (1) *intentional interference* with plaintiff's existing or potential business relationships, (2) the interference is accomplished by *improper means*, and (3) *injury* suffered by plaintiff."[137]  While the first and the third elements are frequently satisfied, plaintiffs often struggle to satisfy the second element, improper means.  "The improper-means requirement is satisfied where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules."[138]  Examples of improper means include "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, [a]

---

[133] *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226.

[134] *Id.*

[135] Dkt. 7 at 16–17.

[136] Dkt. 15 at 15–16.

[137] *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1081 (10th Cir. 2018) (citing *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553 (Utah 2015)) (emphasis in original).

[138] *Id.* at 1083 (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982*), overruled on other grounds by Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553).

disparaging falsehood,"[139] or actions that "violate an established standard of a trade or profession."[140]

Big Squid alleges Domo employed improper means through "the misuse of Big Squid's confidential information, deceit and misrepresentation, deliberate breaches of contractual and non-contractual duties with the intent to injure Big Squid, and other acts not in accordance with the established standards of Domo's trade or profession."[141] This list is conclusory, and fails to adequately plead improper means for three reasons. First "a deliberate breach of contract, even where employed to secure economic advantage, is not, by itself, an 'improper means.'"[142] In *Leigh Furniture & Carpet Co. v. Isom*, the Utah Supreme Court held "a breach of contract committed for the immediate purpose of injurying [sic] the other contracting party is an improper means."[143] However, the *Leigh Furniture* Court was applying a test for the second element of tortious interference—improper means *or* improper purpose—that the Utah Supreme Court later abandoned in *Eldridge v. Johndrow*.[144] The *Eldridge* decision ended courts' consideration of a party's purpose in tortious interference claims.[145]

---

[139] *Id.* (quoting *Leigh Furniture*, 657 P.2d at 308).

[140] *Leigh Furniture*, 657 P.2d at 308; *see also C.R. England v. Swift Transportation Co.*, 2019 UT 8, ¶ 42, 437 P.3d 343 (explaining improper means includes "only those actions that are contrary to law, such as violations of statutes, regulations, or recognized common-law rules, or actions that violate an established standard of a trade or profession.") (citation omitted).

[141] Dkt. 2, Ex. B (Complaint) ¶ 92.

[142] *C.R. England v. Swift Transportation Co.*, 2019 UT 8, ¶ 42 n.74, 437 P.3d 343 (citing *Leigh Furniture*, 657 P.2d at 309; *Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 989 (D. Utah 2018) (holding a breach of contract "does not qualify as improper means under Utah law.").

[143] *Leigh Furniture*, 657 P.2d at 309.

[144] 2015 UT 21, ¶ 64, 345 P.3d 553 ("We therefore conclude that the improper-purpose doctrine has not worked well in practice, and that more good than harm will come by departing from precedent. It should therefore be abandoned.") (quotations and citations omitted).

[145] *Id.*

Although Utah's Supreme Court has not explained whether breaching a contract with the *purpose* of injuring the other party constitutes improper means, this court thinks consideration of purpose did not survive *Eldridge*. Indeed, "it would be inconsistent with the reasoning of *Eldridge*" which abandoned considerations of a party's purpose, "to consider a party's motivation for breaching its contract in determining whether the party could satisfy the improper means element."[146] Furthermore, Utah courts have generally adopted the view that "[c]ontract law is amoral,"[147] and an intentional breach of contract "to secure economic advantage, is not, by itself, an improper means."[148] This court therefore rejects Big Squid's assertion that Domo's intentional breach of contract, intended to injure Big Squid or otherwise, constituted improper means.

Second, from the face of the Complaint, it is unclear how Domo engaged in "deceit" and "disparaged" Big Squid. Big Squid fails to support these claims with clear factual allegations. Although the court located some allegations of misrepresentation and disparagement in the Complaint, Big Squid does not identify these allegations as improper means in its Complaint or its briefing defending the tortious interference claim. This vague and conclusory pleading fails to provide Domo with a meaningful opportunity to respond. These allegations are therefore conclusory, and fail to put Domo on notice of what actions, if any, constituted deceit and disparagement.

---

[146] *Celtig*, 347 F. Supp. 3d at 987–88 ("It now appears that, under Utah law, a plaintiff can no longer establish the improper means element of a claim for intentional interference based solely on the defendant's motivation for breaching its own contract. Indeed, it would be inconsistent with the reasoning of *Eldridge* to consider a party's motivation for breaching its contract in determining whether the party could satisfy the improper means element of a claim for either tortious interference with existing or prospective economic relations.").

[147] *TruGreen Companies, L.L.C. v. Mower Bros., Inc.*, 2008 UT 81, ¶ 19, 199 P.3d 929 (citation omitted).

[148] *Leigh Furniture*, 657 P.2d at 309.

Third, Big Squid fails to adequately plead Domo violated industry standards. Big Squid's allegations do not provide notice what Domo did to violate industry standards. Although Big Squid alleges Domo deleted Big Squid's access to a customer subscriber agreement with Walmart, "instructed their sales team to spy on Big Squid," and "attempted to record Big Squid's presentation with the expressed intent of copying Big Squid's intellectual property," Big Squid fails to identify these actions as violations of industry standards or improper means. Apart from its conclusory allegation that Domo violated industry standards, Big Squid offers no allegation concerning what industry standards applied to Domo's conduct. Big Squid's vague patchwork of allegations does not provide Domo with adequate notice of Big Squid's tortious interference theory.[149] Nor do the allegations allow the court to draw the reasonable inference that Domo is liable for violating industry standards. Big Squid's tortious interference claim is dismissed without prejudice.

### iv. Big Squid's Unfair Competition Claim is Inadequately Pled.

Domo moves to dismiss Big Squid's unfair competition claim on the grounds that it is inadequately pled.[150] Utah law provides statutory and common law causes of action for unfair competition,[151] and Big Squid brings a common law version of the tort.[152] To prove a common law unfair competition claim, a plaintiff must demonstrate that the defendant "imitate[d] by some device or designation the wares made and sold by [plaintiff] for the purpose of palming off

---

[149] *See Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) ("Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests.") (quotations, ellipses, and citations omitted).

[150] Dkt. 7 at 3.

[151] *See* Utah Code Ann. § 13-5a-103 ("a person injured by unfair competition may bring a private cause of action against a person who engages in unfair competition"); *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 13, 192 P.3d 858 ("Pursuant to Utah common law, unfair competition includes—but is not limited to—passing off, palming off, imitating, and causing or likely causing confusion or deception.").

[152] *See* Dkt. 15 at 16 (citing Utah's rule for a common law unfair competition claim).

or substituting [defendant's] wares for those of the [plaintiff], and in that way misleading the purchaser by inducing him to buy the wares made and sold by the [defendant] instead of those by the [plaintiff]."[153]  Although no Utah state court has expressly expanded the common law unfair competition claim beyond passing-off theories to a misappropriation theory,[154] the Utah federal district court has.[155]

At least one decision from this court includes a statement that "[t]he gravamen of a [Utah] misappropriation claim is that a defendant has seized for his own benefit something of value that the plaintiff had built up through time, money, or effort, which is then generally used to compete against the plaintiff."[156]  The undersigned does not know the origin of this language,

---

[153] *Overstock*, 2008 UT 55, ¶ 13 (quoting *Rocky Mountain Bell Tel. Co. v. Utah Indep. Tel. Co.,* 31 Utah 377, 88 P. 26 (1906) (explaining unfair competition "constitutes misrepresentation and deception, and therefore becomes, and is, a fraud, not only against the person whose wares are thus imitated, but against the public as well.")).

[154] *See id.*; *Beard v. Bd. of Educ. of N. Summit Sch. Dist.*, 16 P.2d 900, 902 (1932) ("Unfair competition consists in passing off or attempting to pass off, upon the public, the goods or business of one person as and for the goods or business of another."); *Hi-Land Dairyman's Ass'n v. Cloverleaf Dairy*, 151 P.2d 710, 716 (1944) ("where a competitor in packing, labeling, dressing, use of colors, and arrangement of type so closely simulates the goods of another, although using a different name as to enable persons handling such goods to palm them off on customers, as the goods of such rival, it is unfair competition, and such simulation will be restrained."); *Budget Sys., Inc. v. Budget Loan & Fin. Plan*, 361 P.2d 512, 514 (1961) (explaining "many of the unfair competition cases are in the merchandising field . . . [and] involve what is termed 'palming off' to the buyer of goods and merchandise which he did not intend to buy."); *Allen's Prod. Co. v. Glover*, 414 P.2d 93, 95–96 (1966) ("Where such a reputation has been earned, to permit someone who had nothing to do with developing it to appropriate and use it as his own, results in a two-pronged evil: depriving the one who created it of the reward of his efforts; and deceiving the public. The encouragement of meritorious service and the good order of society demand the recognition of these interests.").

[155] *See Dubuque Prod., Inc. v. Lemco Corp.*, 227 F. Supp. 108, 122 (D. Utah 1963) (enjoining defendants from unfair competition and explaining "[t]he scope of said injunction shall be consistent with the findings of fact set forth herein and these conclusions and shall embrace all means herein determined to have been unfair and unlawful and all items materials and designs found to have been wrongfully copied and *misappropriated* by the defendants") (emphasis added); *Am. Airlines, Inc. v. Platinum Worlds Travel*, 769 F. Supp. 1203, 1207 (D. Utah 1990), *aff'd sub nom. Am. Airlines v. Christensen*, 967 F.2d 410 (10th Cir. 1992) ("[I]t appears that unfair competition is not restricted to [palming off]. In *Dubuque Prod. Inc. v. Lemco Corp.,* 227 F.Supp. 108 (D. Utah 1963), the court found the defendants liable for the *misappropriation* of the plaintiff's confidential business information.") (emphasis added); *Proctor & Gamble Co. v. Haugen*, 947 F. Supp. 1551, 1554 (D. Utah 1996) (citing *American Airlines* for the proposition that "[t]he gravamen of a misappropriation claim is that a defendant has seized for his own benefit something of value that the plaintiff has built up through time, money, or effort, which is then generally used to compete against plaintiff").

[156] *Proctor & Gamble*, 947 F. Supp. at 1554 (citing *American Airlines,* 769 F.Supp. at 1207; *Budget Sys.,* 12 Utah 2d 18, 361 P.2d 512, 514 (1961)).

and it lacks the benefit of the parties' briefing in the case that adopted this language. It appears no Utah State court has ever recognized this theory for unfair competition in Utah law, and the court can find no substantive analysis of the theory in the federal decisions that reference it.[157] This court is skeptical of an interpretation and expansion of Utah's common law that recognizes unfair competition torts based on theories of misappropriation.

Nevertheless, Big Squid alleges Domo engaged in unfair competition through misuse and misappropriation of Big Squid's proprietary and confidential information, "deceit and misrepresentation, and [] deliberate breaches of contractual and noncontractual duties."[158] This claim fails for a number of reasons. First, misuse of information, deceit, misrepresentation, and deliberate breaches of contractual duties are not grounds for an unfair competition claim.[159] Moreover, Big Squid abandons these theories in its Opposition to Domo's Motion to Dismiss.[160] Second, even if Utah common law recognizes an unfair competition misappropriation claim, Big Squid's misappropriation theory is inadequately pled. Big Squid fails to allege what Domo misappropriated and how Domo used that information to compete with Big Squid. Finally, to the extent Big Squid asserts a palming off theory, it fails because Big Squid does not allege Domo confused consumers by palming off Big Squid's wares. Big Squid's unfair competition claim is dismissed without prejudice.

---

[157] *See American Airlines*, 769 F.Supp. at 1207.

[158] Dkt. 2, Ex. B (Complaint) ¶ 99.

[159] *See Overstock*, 2008 UT 55, ¶ 13.

[160] *See* Dkt. 15 at 16–17.

*v. Big Squid's Declaratory Judgment Claim.*

Domo moves to dismiss Big Squid's claim for declaratory judgment on the grounds that Big Squid fails to state a claim upon which relief can be granted.[161]  Through this claim, Big Squid seeks declaratory judgment on specific provisions within the MSPA and the DAPPA.[162] Without the aid of a developed factual record and specific briefing from the parties, the court cannot resolve Big Squid's declaratory judgment claim at this stage.  Domo's Motion to Dismiss is therefore denied as premature.

**c.  Big Squid's Motion to Dismiss is DENIED.**

Big Squid moves to dismiss Domo's claims for Copyright Infringement, Federal Misappropriation of Trade Secrets, State Misappropriation of Trade Secrets, Conversion, Tortious Interference, and Injunctive Relief.  For the reasons stated, the court denies Big Squid's Motion to Dismiss in its entirety.

*i. Domo's Copyright Claim is Adequately Pled.*

Big Squid moves to dismiss Domo's copyright infringement claim on the grounds that it is inadequately pled.[163]  In particular, Big Squid argues Domo's claim fails because Domo did not specifically identify its copyright material and describe Big Squid's infringing conduct.[164] Domo contends dismissal is inappropriate because it plausibly pled each element of its copyright infringement claim.[165]

---

[161] Dkt. 7 at 19.

[162] Dkt. 2, Ex. B (Complaint) ¶¶ 104–10.

[163] Dkt. 11 at 3–7.

[164] *Id.*

[165] Dkt. 32 at 2–3.

Under the Copyright Act of 1976 "copyright protection attaches to 'original works of authorship . . . fixed in any tangible medium of expression.'"[166] Authors of copyrightable material gain exclusive rights in the work "immediately upon the work's creation, including rights of reproduction, distribution, and display."[167] "The Copyright Act entitles a copyright owner to institute a civil action for infringement of those exclusive rights."[168] To prevail on such a claim, a plaintiff must establish both: (1) ownership of a valid copyright, and (2) that defendants copied protectable elements of the copyrighted work.[169] Domo satisfies the first element of its copyright infringement claim at the motion to dismiss stage by alleging ownership of a "federally registered copyright."[170]

Copying, the second element of a copyright infringement claim, has two components.[171] "First, a plaintiff must demonstrate that the defendant copied the plaintiff's work 'as a factual matter.'"[172] Copying can be shown by "establishing that Defendants had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material."[173] Domo adequately alleges Big Squid had access to its

---

[166] *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (citing 17 U.S.C. § 102(a)).

[167] *Id.* (citing 17 U.S.C. § 106).

[168] *Id.* (citing 17 U.S.C. § 501(b)).

[169] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

[170] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002); *see Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1262 (10th Cir. 2008) (explaining that there is a presumption of a valid copyright if a party can produce "registration certificates . . . from the Copyright Office") (citations omitted). *See also* Dkt. 6 (Counterclaim) ¶ 79 ("Domo is the sole owner of the copyrights in its software platform and other software applications including without limitation all source code therein, and has obtained a Certificate of Registration, Reg. No. TX0007966592, for the copyrights in its platform, with an effective date of registration of February 3, 2015.").

[171] *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012) (citations omitted).

[172] *Id.* (citing *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832 (10th Cir.1993)).

[173] *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996) (citing *Gates,* 9 F.3d at 832).

copyrighted "source code," and used this source code to develop similar products.[174]  These

allegations support the reasonable inference that Big Squid copied Domo's copyrighted material.

To prove the second component of copying, Domo "must establish 'substantial

similarity' between the allegedly infringing work and the elements of the copyrighted work that

are legally protected."[175]  This component is satisfied if "[Big Squid's] work is so similar to

[Domo's] work that an ordinary reasonable person would conclude that [Big Squid] unlawfully

appropriated [Domo's] protectable expression by taking material of substance and value."[176]  In

relevant part, Domo alleges: (i) Big Squid incorporated Domo's copyrighted source code into

Big Squid's own products, (ii) Big Squid's products are "derivative works" of Domo's

copyrighted material, (iii) Big Squid is using those "derivative works" to market itself to Domo's

customers, and (iv) Big Squid is sharing those "derivative works" with Domo's competitors.[177]

These allegations give rise to a reasonable inference that Big Squid's "derivative works" are

substantially similar to Domo's copyrighted material.  It is reasonable to infer that Domo's

customers were attracted to Big Squid's "derivative works" because they were substantially

similar to Domo's copyrighted material.  Likewise, Domo's competitors would benefit from Big

Squid's "derivative works" if those works incorporated essential components of Domo's source

code.  It is reasonable to infer Domo's competitors would be attracted to Big Squid's "derivative

works" because they were substantially similar to Domo's protected material.  These reasonable

inferences, applicable at this stage of the proceeding, suggest Big Squid's "derivative works" are

---

[174] Dkt. 6 (Counterclaim) ¶¶ 33–38.

[175] *Blehm*, 702 F.3d at 1199 (citing *Jacobsen,* 287 F.3d at 942–43).

[176] *Id.* at 1202 (citing *Country Kids,* 77 F.3d at 1288).

[177] Dkt. 6 (Counterclaim) ¶¶ 34–38, 80.

substantially similar to Domo's copyrighted material.  Domo's copyright claim is adequately pled.

> ### ii. *Domo's Federal Misappropriation of Trade Secrets Claim is Adequately Pled.*

Big Squid moves to dismiss Domo's federal misappropriation of trade secrets claim on the grounds that it is inadequately pled.[178]  Under the Defend Trade Secrets Act (DTSA), trade secret owners may bring civil actions for the misappropriation of trade secrets used in interstate commerce.[179]  Trade secrets include "all forms and types of [tangible or intangible] information" that the owner "has taken reasonable measures to keep . . . secret," and that "derives independent economic value" from remaining a secret.[180]  The DTSA defines "misappropriation" as "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent."[181]  To establish a claim for misappropriation of trade secrets under the DTSA, a plaintiff must show: "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was

---

[178] Dkt. 11 at 7–9.  Without citing to relevant authority, Big Squid asserts in a footnote that Domo must distinguish between trade secrets and other proprietary information.  *Id.* at 8 n.5.  This argument does not appear to be an affirmative defense, and it has no bearing on whether Domo has stated a claim for federal trade secret misappropriation.

[179] *See* 18 U.S.C.A. § 1836; *Ultradent Prod., Inc. v. Spectrum Sols. LLC*, No. 2:17-CV-890, 2018 WL 324868, at *2 (D. Utah Jan. 8, 2018) ("The DTSA creates a cause of action for the 'owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.'") (quoting *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *3 (N.D. Cal. Apr. 24, 2017) (quoting 18 U.S.C. § 1836(b)(1)).

[180] 18 U.S.C. § 1839(3); *see also Ultradent,* 2018 WL 324868, at *2 ("A 'trade secret' includes all forms and types of information that derives value from being secret and that the owner took reasonable measures to keep secret.") (citation omitted).

[181] 18 U.S.C. § 1839(5); *see also Ultradent,* 2018 WL 324868, at *2 ("'Misappropriation' consists of (a) 'acquisition of a trade secret' by a person who knows or should know the secret was improperly acquired or (b) 'disclosure or use of a trade secret of another without express or implied consent.'") (citation omitted).

acquired by improper means."[182]  Plaintiffs can also satisfy the third element by showing that the trade secret was "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret."[183]

Although the DTSA is a complex statute that offers several ways plaintiffs can prove misappropriation claims, Domo's trade secret misappropriation theory is quite simple: (i) Domo shared its trade secrets with Big Squid, (ii) Big Squid had a duty not to disclose or misuse those trade secrets, and (iii) Big Squid breached that duty.  Domo supports this theory with ample factual allegations that give rise to the reasonable inference of trade secret misappropriation. Domo adequately pleads the first element of its DTSA claim by summarizing the trade secret information at issue, explaining its value, and identifying the steps Domo took to safeguard the secrecy of the information.[184]  In support of the second and third elements, Domo alleges: (i) Big Squid was provided access to Domo's trade secrets under the terms of the MSPA, the DAPPA, and the MRRA; (ii) those contracts governed Big Squid's duty to safeguard Domo's trade secrets and not use them to compete with Domo; and (iii) Big Squid breached these duties by disclosing and misusing the trade secrets.[185]  These allegations support a reasonable inference that Big Squid misappropriated Domo's trade secrets.

---

[182] *API Americas Inc. v. Miller*, No. 2:17-CV-02617-HLT, 2019 WL 1506955, at *5 (D. Kan. Apr. 5, 2019) (citing *Video Gaming Techs., Inc. v. Castle Hill Studios LLC*, 2018 WL 3437083, at *4 (N.D. Okla. 2018) (listing elements of misappropriation claim under the DTSA); *Arctic Energy Servs., LLC v. Neal*, 2018 WL 1010939, at *2 (D. Colo. 2018) (same)); *see also Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *4 (W.D. Okla. Dec. 8, 2017) ("Thus, to show a DTSA violation, Plaintiff must plausibly plead (1) trade matter, (2) reasonable secrecy, (3) independent economic value resulting from this secrecy, (4) acquisition of the trade secret, (5) improper means, (6) culpability, and (7) relation to interstate commerce."). As the *API Americas* court noted, "there does not appear to be any controlling decision regarding the elements required to establish a misappropriation claim under the recently-enacted DTSA."  2018 WL 1506955, at *5 n.5.  This court "therefore looks to the decisions of other district courts in this Circuit for guidance." *Id.*

[183] 18 U.S.C. § 1839(5)(B)(ii)(II).

[184] *See* Dkt. 6 (Counterclaim) ¶¶ 12, 87, 90–93.

[185] *Id.* ¶¶ 12, 22–23, 28–31, 55, 75, 88, 93–98.

### iii. *Domo's State Misappropriation of Trade Secrets Claim is not Barred by the Economic Loss Rule.*

Big Squid argues Domo's state misappropriation of trade secrets claim is barred by Utah's economic loss rule.[186] Utah's economic loss rule "marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[187] "When applied, 'the economic loss rule prohibits tort claims for purely economic loss.'"[188] "Utah's 'formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach *absent an independent duty of care* under tort law.'"[189]

Under Utah's Uniform Trade Secrets Act (UTSA), an owner of a trade secret can bring a claim for misappropriation of trade secrets.[190] To prevail on such a claim, a plaintiff must show: "(1) the existence of a trade secret, (2) communication of the trade secret to [defendant] under an express or implied agreement limiting disclosure of the secret, and (3) [defendant's] use of the secret that injures [plaintiff]."[191] Although the UTSA "displaces conflicting tort, restitutionary, and other law . . . [that] provid[es] civil remedies for misappropriation of a trade secret," it does

---

[186] Dkt. 11 at 13.

[187] *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 70, 436 P.3d 151 (quoting *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 32, 28 P.3d 669).

[188] *Id.* (quoting *Gables at Sterling Village Homeowners Ass'n, Inc. v. Castlewood-Sterling Village I, LLC*, 2018 UT 04, ¶ 47, 417 P.3d 95).

[189] *Id.* (quoting *Hermansen v. Tasulis*, 2002 UT 52, ¶ 16, 48 P.3d 235) (emphasis in original). *See generally HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶¶ 12–15, 435 P.3d 193 (explaining the "two complimentary yet distinct applications" of the economic loss rule under Utah law).

[190] Utah Code Ann. § 13-24-4(1) ("a complainant is entitled to recover damages for misappropriation.").

[191] *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 44, 372 P.3d 629 (citation omitted).

not affect "contractual remedies, whether or not based on misappropriation of a trade secret."[192]

The Utah Court of Appeals explained "the UTSA's preemption provision *does permit* individuals and corporate entities to protect their valuable commercial information contractually, regardless of whether such information meets the statutory definition of 'trade secret.'"[193] This recognition that parties may simultaneously maintain actions for breach of contract and misappropriation of trade secrets cuts against Big Squid's position.

Big Squid has failed to persuade the court that Utah's economic loss rule should be expanded from barring *tort* claims to barring Domo's *statutory* claim.[194] Rather than displace contractual duties, the UTSA provides trade secret owners a right to bring misappropriation claims based on breach of contractual duties.[195] An essential element of a UTSA claim is "communication of the trade secret to [defendant] under *an express or implied agreement limiting disclosure of the secret*."[196] This court declines to interpret Utah's economic loss rule as barring a *statutory* claim that requires as an element an agreement not to disclose or misuse trade

---

[192] *See* Utah Code Ann. §§ 13-24-8(2)(a).

[193] *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 44, 274 P.3d 317 (citation omitted) (emphasis added); *see also Wolfe Tory Med., Inc. v. C.R. Bard, Inc.*, No. 2:07-CV-378TS, 2008 WL 541346, at *4 (D. Utah Feb. 25, 2008) (explaining that because the UTSA "creates an independent legal duty . . . to refrain from disclosure or use of a trade secret of another," the economic loss rule did not bar "Plaintiff's statutory trade secret misappropriation claim").

[194] *See generally HealthBanc Int'l*, 2018 UT 61, ¶ 12 (explaining the economic loss rule "declares that when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and *parties are not permitted to assert actions in tort*.") (emphasis added); *KTM Health Care Inc.*, 2018 UT App 152, ¶ 70 ("Utah's formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty *may not assert a tort claim* for such a breach absent an independent duty of care under tort law.") (emphasis added); *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2010 UT 6, ¶ 28, 230 P.3d 1000 (In essence, the economic loss rule marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, *and tort law*, which protects individuals and their property from physical harm by imposing a duty of reasonable care.") (emphasis added).

[195] Utah Code Ann. § 13-24-2(2) (defining "misappropriation" as "disclosure or use of a trade secret of another without express or implied consent by a person who. . . at the time of the disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . *acquired under circumstances giving rise to a duty to maintain its secrecy*.") (emphasis added).

[196] *USA Power*, 2016 UT 20, ¶ 44 (emphasis added).

secrets.  Utah's economic loss rule does not operate to prevent Domo's vindication of its statutory right to protect its trade secrets.  Nor does it erase Big Squid's statutory duty to refrain from misappropriating trade secrets.  Big Squid's motion to dismiss Domo's UTSA claim is accordingly denied.

> iv.  *Domo's Conversion Claim is not Preempted, and it is not Barred by the Economic Loss Rule.*

Big Squid moves to dismiss Domo's conversion claim on the grounds that it is preempted by the Copyright Act, preempted by the UTSA, and barred by the economic loss doctrine.[197]  Domo contends its conversion claim is not preempted because it concerns tangible objects, not intellectual property.[198]  Domo further contends the economic loss rule does not bar its conversion claim because Big Squid converted Domo's property after the contracts terminated.[199]

To succeed on a claim for conversion under Utah law, a plaintiff must prove: (1) defendant willfully interfered with plaintiff's chattel, (2) defendant had no lawful justification for the interference, and (3) plaintiff was deprived of his lawful use and possession of the chattel.[200]  Because "[c]onversion is concerned with possession, not title . . . the party alleging conversion must show that he or she is entitled to immediate possession of the property at the time of the alleged conversion."[201]

---

[197] Dkt. 11 at 11–15.

[198] Dkt. 32 at 16.

[199] *Id.* at 18.

[200] *Lawrence v. Intermountain, Inc.*, 2010 UT App 313, ¶ 15, 243 P.3d 508 (quoting *Fibro Trust, Inc. v. Brahman Fin., Inc.,* 1999 UT 13, ¶ 20, 974 P.2d 288).

[201] *Fibro Tr.*, 1999 UT 13, ¶ 20 (citations omitted).

Preemption is an affirmative defense, and Big Squid bears the burden of proving this claim is preempted by the Act and the UTSA.[202]  Big Squid has failed to meet this burden. Domo's conversion claim is not preempted by the Act and the UTSA because it concerns different subject matter and different rights.  First, the subject matter of Domo's conversion claim falls outside the scope of copyright and trade secret material.  The Act only preempts state common law claims concerning intellectual property "within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102 and 103."[203]  Similarly, the UTSA does not preempt civil remedies "based upon wrongful conduct independent of the misappropriation of trade secrets or otherwise confidential information."[204]

"[I]t is only proper to dismiss a complaint based on an affirmative defense when the complaint itself admits all the elements of the affirmative defense."[205]  These elements are not admitted in Domo's Counterclaim, which does not allege Big Squid converted only copyright and trade secret material.  Instead, Domo claims Big Squid converted "Deliverables,"[206] which the MSPA defines as "any tangible or intangible materials originated, prepared or provided to Domo . . . in the course of performing Professional Services "[207]  This broad definition may include copyright and trade secret material, but it also potentially includes property that falls outside the subject matter of the Act and the UTSA.  Discovery may reveal the extent to which this claim relies upon the conversion of copyright and trade secret material.  But at this stage, the

---

[202] *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1351 (10th Cir. 2015).

[203] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993) (citations omitted).

[204] *CDC Restoration*, 2012 UT App 60, ¶ 48 (citation omitted). *See also* Utah Code Ann. § 13-24-8(2)(b) ("This chapter does not affect . . . other civil remedies that are not based upon misappropriation of a trade secret").

[205] *Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019) (citation omitted).

[206] Dkt. 6 (Counterclaim) ¶ 169.

[207] Dkt. 6, Ex. A §§ 1.3.

court is required to draw all reasonable inferences in Domo's favor. Doing so, the court concludes Domo has sufficiently pled a conversion claim that is not based on material protected under the Act and the UTSA.

Second, Domo's conversion claim concerns the right to possess tangible materials.[208] Conversely, the Act protects a copyright owner's exclusive rights to: "(i) reproduce the copyrighted work; (ii) prepare derivative works; (iii) distribute copies of the work; (iv) perform the work publicly; and (v) display the work publicly."[209] And, the UTSA protects a trade secret owner's exclusive knowledge and use of trade secret information.[210] Unlike a claim under the Act or the UTSA, Domo's conversion claim is concerned with possession—Domo claims it is "entitled to immediate possession of the [Deliverables]."[211] Domo's conversion claim is therefore qualitatively different from a copyright or a UTSA claim.

Finally, Domo's conversion claim is not barred by the economic loss rule. Under the economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.'"[212] Applying this rule, the Tenth Circuit in *BC Tech., Inc. v. Ensil Int'l Corp.* held that once a contract between parties was terminated, a party's duty to return property

---

[208] *Fibro Tr.*, 1999 UT 13, ¶ 20 ("A conversion is an act of wilful [sic] interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.") (citation omitted).

[209] *Gates*, 9 F.3d at 847 (citation omitted).

[210] *See* Utah Code Ann. § 13-24-2(2) (defining "misappropriation" as "acquisition of a trade secret by a person who knows or reason to know that the trade secret was acquired by improper means; or [] disclosure or use of a trade secret of another without express or implied consent"); *CDC Restoration*, 2012 UT App 60, ¶ 45 ("the UTSA preempts claims based on the unauthorized use of information").

[211] *Fibro*, 199 UT 13, ¶ 20 (citations omitted).

[212] *KTM Health Care*, 2018 UT App 152, ¶ 70 (citations omitted).

"was no longer governed by the contract's allocation of risk."[213]  Instead, the party's duty to

return property was governed by Utah's common law tort of conversion.[214]  The Court therefore

concluded the economic loss rule did not bar the plaintiff's conversion claim.[215]  The same

conclusion holds true here, where Domo alleges Big Squid breached multiple contracts, and has

since failed to return "Deliverables" obtained through the contracts.[216]  Discovery will reveal

whether and when the contracts that governed Big Squid's duty to return the "Deliverables" were

terminated.  But at this stage, Domo need only plead enough factual matter, taken as true, to state

a claim that is plausible on its face.  Drawing reasonable inferences from Domo's allegations, the

court concludes Domo has satisfied this standard.

> ### v. Domo's Tortious Interference Claim is not Preempted, nor is it Barred by the Economic Loss Rule.

Big Squid recycles its arguments about Domo's conversion claim, and moves to dismiss

Domo's tortious interference claim on the same grounds.[217]  Big Squid's recycled arguments fail

for the same reasons they failed to support dismissal of Domo's conversion claim: Domo's

tortious interference claim is not preempted because it concerns different subject matter and

different rights, and Domo's tortious interference claim is not barred by the economic loss rule

because interference allegedly occurred after the parties' contracts terminated.

The subject matter of Domo's tortious interference claim is outside the scope of claims

covered by the Copyright Act and the UTSA.  For example, Domo claims Big Squid engaged in

---

[213] 464 F. App'x 689, 699 (10th Cir. 2012).

[214] *Id.*

[215] *Id.*

[216] *See* Dkt. 6 (Counterclaim) ¶¶ 169–70.

[217] Dkt. 11 at 11–15.

improper means through, among other things, "conversion of the Deliverables[] and deceptive practices."[218]  As explained above, the parties' definition of "Deliverables" includes property that falls outside the scope of copyright and trade secret material.[219]

Additionally, Domo's tortious interference claim concerns different rights than copyright and UTSA claims.  Domo's tortious interference claim concerns the right to be free from unlawful interference, like conversion.[220]  To prove this theory of tortious interference, Domo would have to prove each element of tortious interference *and* conversion.  These elements are substantially different than the elements required for copyright claims and UTSA misappropriation claims.[221]

Finally, the economic loss rule is inapplicable to tortious interference that occurred after the parties terminated contractual relations.[222]  Domo alleges Big Squid breached all three contracts.  Once the contracts ended, an independent duty of care arose under Utah's common law not to convert Domo's property.  Domo alleges Big Squid interfered with—and continues to interfere with—its economic relations through, among other things, conversion of the "Deliverables."[223]  These allegations support the reasonable inference that Big Squid interfered with Domo's economic relations after the contracts were terminated.

---

[218] Dkt. 6 (Counterclaim) ¶ 179.

[219] *See* discussion *supra* Section II.c.iv.

[220] *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1081 (10th Cir. 2018) (citation omitted) (explaining "the improper-means requirement is satisfied where the means used to interfere with a party's economic relations are contrary to law, such as violations of . . . common-law rules.").

[221] *See* discussion *supra* Sections II.b.i., II.c.i, II.c.iii, and II.c.iv.

[222] *See* discussion *supra* Section II.c.iv.

[223] Dkt. 6 (Counterclaim) ¶¶ 178–79.

*vi. Domo's Injunctive Relief Claim.*

Big Squid moves to dismiss Domo's claim for injunctive relief on the grounds that it is a remedy, not a claim.[224]  Because Domo concedes that it has failed to state a claim,[225]  the court dismisses Domo's "claim" for injunctive relief.[226]  Domo's request for injunctive relief, as a remedy, remains.

---

[224] Dkt. 11 at 16.

[225] Dkt. 32 at 18–19.

[226] *See* Fed. R. Civ. P. 12(b)(6) (providing for dismissal of claims that "fail[] to state a claim upon which relief can be granted").

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

- Domo's Motion to Stay Big Squid's DAPPA-Related Claims and Compel Arbitration is DENIED;[227]

- Domo's Motion to Dismiss is GRANTED IN PART;[228]

    o Big Squid's Third Claim for Relief, Tortious Interference with Economic Relations, is DISMISSED without prejudice;

    o Big Squid's Fourth Claim for Relief, Unfair Competition, is DISMISSED without prejudice; and

- Big Squid's Motion to Dismiss is DENIED.[229]

SO ORDERED this 5th day of August, 2019.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[227] Dkt. 8.

[228] Dkt. 7.

[229] Dkt. 11.